UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KURT ALBRIGHT,

        Plaintiff,

    v.                                    Case No. 19-C-673

ANDREW M. SAUL,
Commissioner of Social Security,

        Defendant.

## DECISION AND ORDER REVERSING THE DECISION OF THE COMMISSIONER

Plaintiff Kurt Albright filed this action for judicial review of a decision by the Commissioner of Social Security denying his application for a period of disability and disability insurance benefits and supplemental security income under Titles II and XVI or the Social Security Act. Albright contends that the administrative law judge's (ALJ) decision is flawed and requires remand for two reasons: (1) the ALJ failed to lay a foundation for the vocational expert's (VE) calculations, rendering the testimony unsupported by substantial evidence; and (2) the ALJ erred in assessing the weight to be afforded to Dr. Jill Pogorelec. For the reasons that follow, the Commissioner's decision will be reversed and remanded for further proceedings.

## BACKGROUND

Plaintiff filed his applications in October 2015, alleging an onset date of May 8, 2015, and listing meralgia paraesthetica, neuropathy, chronic obstructive pulmonary disease (COPD), arthritis, bursitis, lower spinal issues/pain, obesity, a stomach hernia, and plantar fasciitis as the conditions that limited his ability to work. R. 15, 233, 237. Plaintiff's applications were denied both initially and upon reconsideration, at which point Plaintiff filed a written request for a hearing

before an ALJ. R. 15. On April 11, 2018, ALJ Walter R. Hellums conducted a video hearing where Plaintiff, who was represented by counsel, and a VE testified. R. 32–66.

Plaintiff testified that he was 57 years old, stood 5'10" tall, and weighed around 357 pounds. R. 43. Plaintiff further testified that he had finished the eleventh grade and had never obtained his GED because he had gotten married and needed to pay the bills. R. 44. Plaintiff ceased work in December 2016. R. 40. Regarding Plaintiff's work, Plaintiff reported that he had been an employee at Kwik Trip for nearly 23 years, performing various tasks including cashiering, stocking shelves, and maintaining various parts of the property. R. 45. Plaintiff noted that heavy lifting, described as fifty pounds "at the most," was an everyday part of the job. R. 46.

When asked why he stopped working on a full-time basis, Plaintiff testified that his legs were "burning so bad" and his back was "getting worse and worse." R. 47. Plaintiff indicated that he had been having these problems since the early 1990s. *Id.* Plaintiff testified that he stopped working on a part-time basis because his legs "gave out," and because the pain in his legs and back became constant and intensified. *Id.* Plaintiff noted that this pain was further aggravated by simple activities like walking or doing the dishes, and that his legs would swell whenever he was active or just wore socks and shoes. R. 48–49. Plaintiff also testified that he used an inhaler every night before going to bed in order to control his COPD. R. 49. Regarding Plaintiff's daily activities, Plaintiff testified that he does not do much throughout the day but is still able to cook food and vacuum the house. He also reported walking up and down the stairs every day to keep his muscles in shape. R. 50–51.

Regarding Plaintiff's physical condition, Plaintiff stated that, at most, he could repetitively lift five to ten pounds, stand just ten minutes in one place, and sit for just one hour at a time. Plaintiff testified that "there's not a lot of comfort" in his day-to-day life. R. 52. Plaintiff further testified that he does not believe he could return to his job at Kwik Trip because his legs and back

would not be able to handle the strain. Plaintiff stated that he doesn't believe he would be able to work any full time job, noting that if there was a way to do it, he would have never left his Kwik Trip job.

After Plaintiff concluded his testimony, VE Pamela Harris testified. R. 55. Harris responded to a number of hypotheticals and provided representative occupations that she believed an individual with Plaintiff's age, education, work experience, and residual functional capacity (RFC) would be able to perform. When asked how she came to the numbers she provided, Harris responded, "I identify, of course, the jobs, and then I start by referencing the occupational employment statistics through the Department of Labor. And then based on my professional experience and training and knowledge of current jobs and their job demands I come up with a final number depending on the hypothetical I'm given." R. 61. Based on these calculations, Harris testified that three representative occupations would be performable in this case. *See* R. 24.

The ALJ, in a twelve-page decision dated June 6, 2018, concluded that Albright is not disabled. R. 15. The ALJ's decision followed the five-step sequential process for determining disability prescribed by the Social Security Administration. R. 16. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 8, 2015, which was the alleged onset date, and that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2019. R. 17. At step two, the ALJ found that Plaintiff has a severe combination of the following impairments: obesity, bilateral meralgia paresthetica, mild lumbar degenerative disc disease, diabetes mellitus with neuropathy, mild COPD, and mild left knee degenerative joint disease. *Id.* The ALJ concluded that the listed impairments significantly limit Plaintiff's ability to perform basic work activities but determined that the remaining impairments that were not listed (a hernia, deep venous thrombosis, and plantar fasciitis) were either non-severe or not medically determinable. R. 18. At step three, the ALJ concluded that Plaintiff does not have

an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

Next, the ALJ considered Plaintiff's RFC, finding that Plaintiff has the capacity to perform medium work as defined in 20 C.F.R. § 404.1567(c) subject to the following limitations: "frequent climbing of ramps or stairs; occasional climbing of ladders, ropes, or scaffolds; occasional stooping and kneeling; occasional use of foot controls with the bilateral lower extremities; and the avoidance of concentrated exposure to pulmonary irritants, such as fumes, odors, dusts, gases, and poor ventilation." R. 19.

At step four, the ALJ found that Plaintiff is unable to perform any of his past relevant work. R. 23. And at step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. R. 24. The ALJ overruled Plaintiff's objection that the VE's methodology for determining the number of jobs is not reliable and concluded that Plaintiff can perform each of the jobs described by the VE, including dining room attendant, machine feeder, and palletizer. R. 24–25. Accordingly, the ALJ concluded that Plaintiff is not disabled. R. 26. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.

## LEGAL STANDARD

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is "such relevant evidence as a reasonable mind could accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions

4

drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

## ANALYSIS

Plaintiff raises two challenges to the ALJ's decision, but the court finds that only one need be addressed since it is enough by itself to require a remand. Plaintiff asserts that the ALJ "played doctor" when he interpreted medical evidence regarding Plaintiff's diabetes diagnosis without first submitting it to an expert for review. The ALJ relied on the medical opinions of the state agency reviewing physicians to support his conclusions. The state agency physicians opined that Plaintiff was limited to medium work with postural and environmental limitations. In particular, the doctors opined that Plaintiff could stand or walk and sit for about six hours in an eight-hour workday. R. 73, 84. Both state agency physicians only considered medical evidence through 2016. Plaintiff was diagnosed with diabetes in March 2017 and consistently received treatment for that diagnosis and other conditions associated with the diagnosis, including leg pain and neuropathy.

Plaintiff asserts that the ALJ improperly interpreted the medical records regarding his diabetes and erred in assessing the degree of limitation that would result from that condition. He also argues that the ALJ erred in relying on the outdated assessments of the state agency physicians

5

because they did not review the medical evidence relating to his diabetes diagnosis. An ALJ should not rely on outdated assessments where new and significant diagnoses or developments reasonably could have changed the reviewing physician's opinion. *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018); *see also Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (remanding where state agency physician did not have access to later medical evidence containing "significant, new, and potentially decisive findings" that could "reasonably change the reviewing physician's opinion"); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (remanding after ALJ failed to submit MRI to medical scrutiny); *Akin v. Berryhill*, 887 F.3d 314, 317 (7th Cir. 2018) (ALJ was incorrect to credit the state agency physician opinions because the physicians did not review 70 pages of medical records submitted after their assessments); *Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018) (ALJ impermissibly relied on outdated opinion of state agency consultants where the opinion was rendered before the plaintiff was treated by pain specialists and before the treating physician opined that the plaintiff's condition had worsened).

Here, the ALJ impermissibly relied on the outdated assessments of the state agency physicians, despite the fact that several exhibits containing "significant, new, and potentially decisive findings" regarding Plaintiff's diabetes diagnosis and associated leg pain were submitted after the state agency physicians' assessments. These findings could have reasonably changed the state agency physicians' opinions and required greater restrictions in Plaintiff's RFC. By failing to seek an updated medical opinion that included a review of these exhibits, the ALJ impermissibly "played doctor" by interpreting the more recent medical records himself. *See Lambert*, 896 F.3d at 744 ("ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves.").

As this court has recognized before, the ALJ and the Agency face various difficulties in ensuring that a state agency physician reviews a claimant's medical record in its entirety before

completing an assessment. *Appel v. Saul*, No. 18-C-1433, 2019 WL 4464805, at *5 (E.D. Wis. Sept. 18, 2019) ("A hearing with an ALJ is scheduled after the state agency physicians reach an opinion on the claimant's limitations and after the claimant's application is denied initially and upon reconsideration. In most cases, the claimant continues to receive treatment up to, and even after, the date of the administrative hearing."). But where, as here, a new diagnosis is made, the court concludes that the ALJ erred in relying on the state agency physicians' outdated assessments. The ALJ's failure to obtain an updated medical opinion in light of the new medical evidence constitutes reversible error.

## CONCLUSION

For the reasons above, the decision of the Commissioner is **REVERSED** and **REMANDED** to the SSA pursuant to 42 U.S.C. § 405(g) (sentence four) for further proceedings consistent with this decision. Although the court has concluded that remand is warranted based on the ALJ's failure to obtain an updated medical opinion, the Commissioner should also address Plaintiff's claim that the ALJ failed to lay a foundation for the VE's testimony on remand. Further consideration of that claimed error on remand will aid in reaching a final resolution of the case and avoid further remands in the future. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 24th day of November, 2020.

s/ William C. Griesbach
William C. Griesbach
United States District Judge